UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTOINE L. ARDDS,

        Plaintiff,

    v.

WILLIAM KNIPP, et al.,

        Defendants.

No.  2:14-cv-960-KJM-EFB P

<u>FINDINGS AND RECOMMENDATIONS</u>

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  He proceeds on an amended complaint filed April 1, 2015 (ECF No. 22), alleging deliberate indifference to his safety and medical needs based on having been assaulted by another prisoner at the Mule Creek State Prison ("MCSP") A Facility Yard ("A yard") and denial of due process in a related disciplinary hearing.  ECF No. 41-3.  Defendants have filed a motion for summary judgment.  ECF No. 41.  For the reasons discussed below, the motion must be granted in part and denied in part.

I.      **The Parties' Factual Assertions**

     **A. Plaintiff's Complaint**

According to plaintiff's complaint, another inmate (McElroy) assaulted plaintiff on January 15, 2013 during a game of basketball on the A yard.  ECF No. 22 at 7.  He sustained injuries to his mouth that required stitches.  *Id.* at 7, 34.  He claims that defendants Moeckly and

1

Mulford, Correctional Officers at the prison, were watching the game from their position between the A yard dining hall and A yard gym and witnessed the assault. *Id.* at 7. His complaint alleges that they saw plaintiff spit blood from his mouth and that neither defendant took action to intervene, obtain medical care for plaintiff, or otherwise address the assault. *Id.* at 7 & 8. He claims that he walked to the middle of the track area with his hands up, as if to say, "Don't you see me bleeding? Aren't you going to respond?" but neither defendant took action. *Id.* at 9. Plaintiff asserts that he returned to his cell and later went to the infirmary to have his injuries treated. *Id.* He claims that Moeckly and Mulford refused medical staff's requests that they arrange for plaintiff to be transferred to the prison's treatment center and instead went home because it was the end of their shift. *Id.* at 10. Nevertheless, plaintiff was transferred to the treatment center and received treatment. *Id.*

Plaintiff claims that because defendants Moeckly and Mulford failed to address the assault on the basketball court, inmate McElroy, joined by two other inmates, attacked plaintiff again two days later. *Id.* at 8-9. The three other inmates struck and punched plaintiff in his torso, head, and back as he left his building. *Id.* at 11. Officer J.M. Gold observed the attack through binoculars. *Id.* at 12.

As noted below, defendants Moeckly and Mulford dispute that they witnessed the assault on the basketball court, and they contend that the incident which occurred three days later involved plaintiff's participation in a riot. Plaintiff was charged with the disciplinary offenses of participating in a riot and refusing to follow a direct order in connection with the altercation and placed in administrative segregation. *Id.* at 12-13, 14. Plaintiff's due process claims relate to the disciplinary proceedings as to those charges.

Plaintiff claims that he tried to present evidence at the hearing on the disciplinary offense to show that he had been a victim of an attack rather than a participant in a riot. *Id.* at 13-14, 15. He wanted to present video surveillance footage of the incidents and have Officer Gold testify to what he had seen. *Id.* at 14. But he claims that defendant Gonzalez refused to allow plaintiff to present this evidence. *Id.* at 14-15. Gonzalez also did not allow plaintiff the assistance of an Investigative Employee even though plaintiff was in administrative segregation and thus unable

to gather evidence. *Id.* at 15.  Gonzalez found plaintiff guilty based on defendant Mulford's report and plaintiff's "inability to present evidence" and imposed 10 days loss of yard privileges, 90 days forfeiture of behavioral credits, and a 4 month term in secured housing. *Id.* at 16, 37. Defendant Knipp, in a subsequent hearing regarding housing placement, refused to allow plaintiff to use the video evidence and to assign plaintiff an investigative employee. *Id.* at 15.  Knipp upheld the disciplinary sanction in plaintiff's administrative appeal. *Id.* at 16.

### B. Summary Judgment Factual Contentions[1]

#### 1. The First Incident

On the morning of January 15, 2013, inmate McElroy asked plaintiff if he wanted to play a game of basketball.  Defendants' Separate Statement of Undisputed Facts ISO Mot. for Summ. Jt. ("DUF") No. 6 (ECF No. 41-3 at 7, citing ECF No. 41-9 (Pl.'s Dep.) at 7-8).  During the game, McElroy played aggressively.  ECF No. 41-9 at 7-8.  At one point, plaintiff "went into" McElroy, causing McElroy to fall. *Id.* at 8.  Plaintiff picked McElroy up and they continued to play. *Id.*  At around 10:30 a.m., plaintiff went in for a lay-up, but McElroy hit plaintiff on the side of the face. *Id.*; ECF No. 22 at 7.  Plaintiff contends that he saw defendants Mulford and Moeckly between the A yard gym and dining hall at that moment.  ECF No. 22 at 7; ECF No. 49 at 4.  When McElroy hit plaintiff, plaintiff claims he looked up to Mulford and Moeckly, but they did not respond.  ECF No. 41-9 at 8.

As noted, there is a dispute over whether Mulford and Moeckly did or did not observe the event.  The A yard is 700-800 feet long and 400 feet wide, with a football field, basketball court, handball court, volleyball court, horseshoe pit, and "earth-based religious group area."  ECF No. 41-11 at ¶ 3.  A concrete track surrounds the yard. *Id.*  Five buildings border the yard on the east side, and the west side is bordered by the program office, vocational area, dining hall, and laundry. *Id.*

---

[1] Facts presented in this section are undisputed unless noted.  Defendants have objected to a few of plaintiff's proffered facts.  ECF No. 55-1.  The court overrules all objections other than No. 11.  Objection No. 11 is to a partial complaint from *Estate of Joseph Duran v. Knipp*, No. 2:14-cv-1091.  The complaint, although a matter of public record, is irrelevant to his action. Defendants' objection is therefore sustained, and the undersigned has not considered the *Duran* complaint in these findings and recommendations.

The A Facility houses 800-900 inmates, and when A yard inmates are released to the yard in the morning, 400-600 inmates generally enter the yard. *Id.* at ¶¶ 4-5. The A yard Officers and Search and Escort Officers are responsible for monitoring the entire yard, but, defendants claim, because of the size of the yard and the number of inmates, the officers cannot focus on a single particular area of the yard for an extended period of time. *Id.* Plaintiff contends that officers could have focused on a particular area of A yard for an extended period of time, because there are three cameras in A facility that presumably enhance officers' observational abilities. ECF No. 49 at 2; ECF No. 53 at 3. Plaintiff believes that these cameras captured and recorded video of the January 15, 2013 incident on the basketball court and that defendants have withheld that recording from him. ECF No. 53 at 3.

Defendants object to plaintiff's statement that there were cameras present, arguing that he lacks the personal knowledge to support his claim that the cameras exist. ECF No. 55-1 at 3. The objection is overruled. Plaintiff's statement purports to be based on his percipient observations and it is clear that he spent time on the yard and had the opportunity to see cameras, if in fact they were present.

Apart from the question of whether there were video recordings of some or all of the assault, there is a dispute as to whether Mulford was even at the prison on January 15th. Although plaintiff believes he saw Mulford that morning on A yard, Mulford declares that he was not there. Rather, Mulford explains that January 15, 2013 was his day off and he was not at work. ECF No. 41-11 at ¶¶ 7-8. He submits his attendance sheet which contains the entry that for that date of "RDO" to designating that it was his "regular day off." ECF No. 41-10. The sheet also shows Mulford hours work for that day as zero. *Id.* Plaintiff disputes this assertion and argues that notwithstanding the attendance sheet, Mulford traded shifts with another officer. ECF No. 53 at 5. Plaintiff claims that "the actual total days worked on his time sheet" contradict Mulford's claim that he was not at the prison on January 15, 2013. ECF No. 53 at 5.

/////

/////

/////

4

As for Moeckly, he states in his declaration that he spends the vast majority of his work days in his office, not on the yard.  ECF No. 41-12 at ¶ 4.  As for the event on January 15, he specifically states that he did "not observe inmate McElroy hit Plaintiff, intentional or otherwise." *Id.* at ¶ 6.

Thus, both defendants Mulford and Moeckly state that they did not see McElroy hit plaintiff during the basketball game and if they had they would have responded immediately.  ECF No. 41-11 at ¶¶ 9-10; ECF No. 41-12 at ¶¶ 6-7.  They further aver that plaintiff did not approach either of them afterward to request medical attention.  ECF No. 41-11 at ¶¶ 15-16; ECF No. 41-12 at ¶¶ 12-13.  They also both assert that they did not see plaintiff bleeding or otherwise become aware that plaintiff needed medical attention and if they had, they would have provided assistance.  ECF No. 41-11 at ¶¶ 13-14; ECF No. 41-12 at ¶ 11.

 Plaintiff testified in his deposition that after McElroy hit him he walked past both Mulford and Moeckly and went to the bathroom to wash his face but he did not approach them.  ECF No. 41-9 at 9-10.  He said he went up to Officer Sly and asked to "to see medical."  *Id.* at 10.  When asked in his deposition "did you ever ask Mulford or Moeckly for medical assistance" he responded "Not at the time."  *Id.* at 11.  He explained that he walked to the middle of the yard with his hands up and that both defendants looked toward him and did nothing.  *Id.*  When again asked "but you did not ask them for medical assistance, correct?" he responded "No, I didn't ask them for medical assistance in the statement alone, it's more saying medical assistance, if I raise my hand I'm saying, 'What you're not going to do nothing?'"  *Id.*  He estimated that Mulford and Moeckly were 20 to 25 feet away.  Plaintiff further testified that he was not prevented from going to get medical assistance on his own, that he did not need permission from Mulford or Moeckly to get medical assistance,[2] and that he in fact went on his own for such assistance.  *Id.* at 12.  He notes, however, that "most the time any time an inmate is assaulted, a medical team is summoned

/////

---

[2] In subsequent briefing, plaintiff disputes whether he needed their permission.  ECF No. 53 at 6.  His current position is that Officer Sly had to get permission from Mulford or Moeckly to transport plaintiff to the "TTA" to get stitches on his lacerated lip.  ECF No. 49 at 5.

1  or an alarm is pushed for a Code 1." *Id.*  Ultimately, he obtained medical attention and received

2  stitches on his lip.  *Id.* at 13.

3  Before McElroy hit plaintiff during the basketball game, plaintiff did not believe McElroy

4  had any reason to attack him and thought they were "cool."  ECF No. 41-9 at 8; ECF No. 49 at 5.

5  He did not think his safety was in danger or that McElroy had any reason to attack him.  ECF No.

6  53 at 6.  Even after the incident, plaintiff did not have any "enemy concerns."  ECF No. 41-9 at

7  14; ECF No. 49 at 5; ECF No. 53 at 7.  He thought that the basketball game incident was isolated

8  rather than a continuing problem.  ECF No. 41-9 at 14-16; ECF No. 49 at 6; ECF No. 53 at 7.  He

9  did not discuss the incident with Mulford or Moeckly before the January 17, 2013 incident.  ECF

10  No. 41-9 at 17-18; ECF No. 41-11 at ¶¶ 18-19; ECF No. 41-12 at ¶ 15; ECF No. 49 at 6.  Mulford

11  and Moeckly state that they had no reason to believe that plaintiff had enemy concerns before the

12  second incident.  ECF No. 41-11 at ¶¶ 19-21; ECF No. 41-12 at ¶¶ 15-17.  Plaintiff disputes that

13  claim.  ECF No. 49 at 6.

14  **2.  <u>The Second Incident</u>**

15  The second incident occurred on January 17, 2013, when, according to defendants,

16  plaintiff was involved in a riot on A yard, and was fighting with McElroy.  ECF No. 22 at 11;

17  ECF No. 41-9 at 18; ECF No. 41-6.  Plaintiff denies that he was involved in a riot.  ECF No. 49 at

18  6; ECF No. 53 at 7.  However, he admits to being in a physical altercation.  He states that he was

19  fighting inmates McElroy, Jones, and Rucker in order to defend himself after they attacked him.

20  ECF No. 49 at 6; ECF No. 53 at 7.  Plaintiff disputes allegations that he failed to comply with

21  officers' orders to get down, insisting that he tried to retreat after he was attacked and only

22  continued to fight to defend himself against McElroy while trying to get to a safe zone by Officer

23  Parks.  ECF No. 49 at 9; ECF No. 53 at 10.

24  After the incident, plaintiff was issued a "CDCR 114-D notice" and placed in

25  administrative segregation.  ECF No. 41-9 at 20.  On the notice, Captain Cherry noted that

26  plaintiff had declined the assistance of an investigative employee.  ECF No. 41-9 at 21.  On

27  January 21, 2013, Correctional Officer Stephens avers that he brought plaintiff a CDCR 115

28  Rules Violation Report ("RVR") charging plaintiff with a serious rules violation for participating

6

in a riot.  ECF No. 41-9 at 22; ECF No. 41-13 at ¶¶ 2-3, 6.  Stephens explained the charge to

plaintiff and told plaintiff he could request an investigative employee ("IE") and request

witnesses at his hearing.  *Id.*  According to Stephens, plaintiff signed the report, which notes that

plaintiff waived an investigative employee and did not request any witnesses.  ECF No. 41-9 at

22; ECF No. 41-13 at ¶¶ 8-10.

Plaintiff denies that, on January 21, 2013, Officer Stephens brought him a copy of the

CDC form 115 RVR for participating in a riot, explained the charges to him, and told him he

could request an investigative employee and witnesses.  ECF No. 49 at 7.  Plaintiff also denies

that he waived an investigative employee and believes that CDCR's Department Operations

Manual ("DOM") required the appointment of an IE even if he had waived one, although portions

of the DOM he cites do not contain this exact requirement.[3]  ECF No. 49 at 6-7; ECF No. 53 at 7-

8. He states that the form indicating that he had waived an IE was fabricated by prison staff and

that, when he signed the form, the box indicating waiver of an IE was not checked.  ECF No. 49

at 7.  The form, as submitted to the court by both parties, contains a box that is checked indicating

---

[3] Plaintiff cites the following sections of the DOM:

§ 42080.5.2    Investigative Employee

The inmate may be assigned an employee to assist in the investigation, preparation or
presentation of a defense at the disciplinary hearing if it is determined by the CDO that
any of the following conditions are met:
- The inmate is illiterate.
- The complexity of the issues makes it unlikely that the inmate can collect and
  present the evidence necessary for an adequate comprehension of the case.
- The inmate's housing status makes it unlikely that the inmate can collect and
  present the evidence necessary for an adequate comprehension of the case.

§ 42080.8  Assistance to Inmates Investigative Employees

On serious rule violations, an investigative employee may be assigned within one working
day after the charges have been submitted for processing.  If a determination has been
made that additional information is necessary for a fair hearing, an investigative employee
shall be assigned even if the inmate has waived the assignment.

http://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/DOM/DOM%202016/2016_DOM.PDF (last checked August 1, 2016).

1  waiver of an IE.  It also contains a section to check boxes for "witnesses" and to list them but no

2  boxes are checked and no witnesses are listed.  ECF No. 41-6 at 2; ECF No. 49 at 63.

3       Defendant Gonzalez served as Senior Hearing Officer on the RVR at a hearing held on

4  February 9, 2013.  ECF No. 22 at 3, 13; ECF No. 41-9 at 19; ECF No. 41-14 at ¶ 4.  Defendant

5  Knipp was not present.  ECF No. 41-9 at 19-20; ECF No. 49 at 7; ECF No. 53 at 9.  Plaintiff

6  admits that defendant Knipp was not present at his RVR hearing, but disputes the assertion that

7  Knipp was not involved in the hearing, arguing that § 52080.3.4 of the DOM vests the warden

8  with power to approve or set aside disciplinary determinations.[4]  ECF No. 49 at 7; ECF No. 53 at

9  9.

10       Gonzalez avers that, at the hearing, he confirmed with plaintiff that he had waived an IE

11  and had not requested any witnesses and reviewed plaintiff's January 21, 2013 signed waiver.

12  ECF No. 41-14 at ¶¶ 6-7.  Based on plaintiff's representations at the hearing and his signature on

13  the form 115 that contained a checked box indicating waiver of an IE and did not included listed

14  witnesses, Gonzalez states that he believed that plaintiff had been provided with all due process

15  requirements before proceeding with the hearing.  *Id.* at ¶ 19.

16       Gonzalez further states that he found plaintiff guilty of the charged rules violation based

17  on the RVR, the "crime incident package," and plaintiff's testimony at the hearing.  *Id.* at ¶ 8.

18  Specifically, Gonzalez states that he found that plaintiff had failed to comply with officers' order

19  that he "get down" and instead continued fighting.  *Id.* at ¶ 12.  Even though plaintiff argued that

20  he was initially attacked, Gonzalez declares that he found him guilty because he engaged in

21  /////

---

22       [4] DOM § 52080.3.4 provides:

23

24       All disciplinary methods/actions are subject to the approval of the Warden or RPA.  The
         Warden or RPA may set aside, dismiss, order a different action, or order a rehearing of the
         rules violation upon:

25          • Their own motion.

26          • Recommendation of staff.
            • Inmate's request or appeal.

27

28  http://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/DOM/DOM%202016/2016_DOM.P
    DF (last checked August 1, 2016).

fighting and did not retreat or comply with officers' orders. *Id.* at ¶ 13; ECF No. 41-9 at 5-6; ECF No. 41-15 at ¶¶ 15-16.

Plaintiff denies that he waived an IE and witnesses at the hearing. ECF No. 49 at 8; ECF No.53 at 9. He states that defendant Gonzalez refused plaintiff's request to call staff witness Officer Gold, who had a "bird's eye view" of the January 17, 2013 altercation, saying that he (Gonzalez) would not permit plaintiff to pit "staff against staff." ECF No. 53 at 23, 26. Instead, Gonzalez used only Mulford's staff statement to find plaintiff guilty despite there being no evidence that plaintiff participated in a riot. ECF No. 53 at 24.

Plaintiff was assessed 90 days loss of behavioral credit and 10 days loss of administrative segregation yard and was referred to the institutional classification committee ("ICC") for imposition of a term in the security housing unit ("SHU"). ECF No. 41-9 at 18-19; ECF No. 41-14 at ¶¶ 14-16; ECF No. 49 at 8-9; ECF No. 53 at 10-11. Plaintiff's rules violation has not been dismissed or overturned. ECF No. 41-9 at 18-19; ECF No. 49 at 8-9; ECF No. 53 at 10-11.

On March 7, 2013, plaintiff appeared before the ICC and was given a 4-month SHU term. ECF No. 41-9 at 23; ECF No. 41-15 at ¶ 3; ECF No. 41-7. The next day, plaintiff received a form 114-D administrative segregation placement notice that informed him that he had been placed in administrative segregation after being observed participating in a riot and that he had been assessed a 4-month SHU term by the ICC the previous day. ECF No. 41-9 at 26. The notice also informed him that the ICC had recommended his transfer to another prison because of plaintiff's enemy concerns in Facility A. *Id.* The notice told plaintiff that he would be seen by the ICC within 10 days to re-affirm his current and future program and housing needs. *Id.*

On March 15, 2013, defendant Knipp served as chairperson at plaintiff's ICC hearing. ECF No. 41-15 at ¶ 4; ECF No. 41-8. The committee reaffirmed the prior committee's action, and plaintiff registered his disagreement. ECF No. 41-15 at ¶ 4; ECF No. 41-8; ECF No. 41-9 at 24. But plaintiff had already been found guilty of the rules violation, and, according to defendants, the ICC was not the right forum to challenge that finding. ECF No. 41-9 at 26; ECF No. 41-15 at ¶¶ 6, 8. Rather, defendants argue that the ICC functions to find proper placement and housing for inmates, not to determine culpability or hear evidence. ECF No. 41-15 at ¶ 7.

1    Citing to California Code of Regulations, title 15, § 3338, plaintiff disputes that the ICC was not a

2    proper forum for challenging his discipline.[5]

3        Plaintiff appealed the guilt determination by filing a form 602 administrative grievance.

4    ECF No. 22 at 16.  Defendant Knipp did not review the appeal and thus did not know the

5    allegations plaintiff raised therein.  ECF No. 41-115 at ¶ 13.

6        **C. Plaintiff's Successive Opposition Papers**

7        Review of the briefs and evidence submitted on this motion is compounded by plaintiff

8    having presented his facts and argument in multiple opposition filings.  Defendants move to strike

9    the most recently-filed successive opposition.  ECF No. 61.

10       The instant motion for summary judgment was filed on February 26, 2016.  ECF No. 41.

11   On March 21 and 25, 2016, plaintiff sought extensions of time to file his opposition brief.  ECF

12   No. 45, 48.  Plaintiff stated that he did not have some pages of his deposition transcript yet (ECF

13   No. 45 at 2) and that he had not yet been provided access to the law library (ECF No. 48 at 2).

14   Shortly thereafter, on March 28, 2016, plaintiff filed an opposition.  ECF No. 49.  However, the

15   following day, the court entered its order granting plaintiff 60 additional days to file his

16   opposition.  ECF No. 50.  Defendants filed a reply to plaintiff's initial opposition on April 5,

17   2016.  ECF No. 51.

18       After having received his requested extension, plaintiff filed new opposition papers on

19   May 17, 2016.  ECF No. 53.  Defendants filed a new reply brief on May 24, 2016, ECF No. 55,

20   and without further order of the court the briefing was closed.  Several weeks later, however,

21   plaintiff requested another extension of time (i.e., until July 21) to file another opposition.  ECF

22   No. 58.  He then filed additional opposition briefs, one on the same day he requested the

23   /////

24   _____

25       [5] This statute does not contain the language plaintiff quotes in his brief and the
     undersigned could not locate the source of that quote after reviewing the statutes and regulations
26   governing segregated-housing-related ICC hearings.  ECF No. 53 at 12 (quoting the statute as
     saying "under Title 15 section 3339(b)(2) [illegible] 'a fair hearing before one or more
27   Classification members shall be held not more than 96 hours after the inmate is given a copy of
     the segregated housing order, unless the inmate requests, in writing, and is granted additional time
28   to prepare a defense."); see Cal. Code Regs. tit. 15, §§ 3335 et seq. & DOM §§ 52080.25 et seq.

1    extension and another one week later.  ECF Nos. 59, 60.  Defendants ask the court to strike these

2    unauthorized briefs.  ECF No. 61.

3         Plaintiff's justification for the extension and/or additional briefing is that defense counsel

4    has allegedly submitted exhibits in support of the summary judgment motion that she has altered

5    with the intent to mislead the court.  ECF No. 58.  Plaintiff first takes issue with correctional

6    officer signatures on defendants' exhibit 1, page 2 (ECF No. 41-5 at 2), claiming that Officer

7    Stephens's name was not on the original RVR.  There is no evidence that defense counsel has

8    altered the document to mislead the court.[6]

9         Plaintiff next claims that, on the same exhibit, "defendant Gonzalez's name is placed in

10   the signate [sic] section . . . and the dates are altered from 01/17/13 to 02/09/13."  ECF No. 58 at

11   3.  Gonzalez's name does not appear on the document, however, and there is no indication that

12   any dates have been altered.  Instead, Gonzalez authored a different report on February 9, 2013.

13        Plaintiff further claims that, by providing a copy of the same RVR in which the names of

14   other inmates have been redacted, defense counsel is trying to mislead the court into believing

15   that the actions of these other inmates were, in fact, plaintiff's actions.  *Id.* at 4.  Plaintiff also

16   appears to believe that his name has been placed over the name of another inmate to show that he

17   was "in a fighting stance" during the alleged riot on January 17, 2013.  *Id.*  Again plaintiff is

18   mistaken.  The court has reviewed all of the exhibits and finds no indication that the documents

19   have been altered as plaintiff claims.  Two different reports prepared by two different officers

20   following the alleged riot identify inmates as being "in a fighting stance"; one officer identifies

21   plaintiff in that stance at some point in the altercation, another officer identifies a different inmate

22   in such a stance.  ECF Nos. 41-5 at 2-3 (Officer Mulford reporting that inmate Pheng "took a

23   fighting stance") and 41-9 at 38 (Officer Gonzalez reporting that plaintiff stood "in a fighting

24   stance").  Contrary to plaintiff's claims, there are not two different versions of the same report

25   with names inserted and/or deleted.

26   _____

27        [6] That Officer Stephens signature appears on the exhibit does not appear relevant to any
     issue in this case.  Perhaps Stephens signed the institution's copy of the RVR and not the copy
     provided to plaintiff.  In either event, the dispute is immaterial and there has been no attempt to
28   mislead the court.

1      Plaintiff also argues that he meant to submit the new opposition papers with his second

2 opposition, but was prevented from doing so by prison officials' refusal to provide him with

3 indigent legal envelopes and law library access.  ECF No. 62.  He also writes that he has short-

4 term memory loss and his mental health disorder hinders his ability to focus.  *Id.*

5      Plaintiff has not provided the court with reason to suspect that defense counsel has altered

6 exhibits.  Further, plaintiff has already filed two sets of opposition briefs.  Nevertheless, out of an

7 abundance of caution and taking account of plaintiff's incarceration and pro se status – in addition

8 to his professed mental health issues – the undersigned has considered the third set of briefs

9 plaintiff filed on June 20, 2016 and June 27, 2016.  Accordingly, plaintiff's motion for an

10 extension of time (ECF No. 58) is granted in part, and denied in part, and the defendants' motion

11 to strike those briefs (ECF No. 61) is denied.

12     **II.**       **The Motion for Summary Judgment**

13        **A.  Summary Judgment Standard**

14      Summary judgment is appropriate when there is "no genuine dispute as to any material

15 fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

16 judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

17 to the determination of the issues in the case, or in which there is insufficient evidence for a jury

18 to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

19 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

20 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

21 motion asks whether the evidence presents a sufficient disagreement to require submission to a

22 jury.

23      The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

24 or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

25 "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

26 trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

27 Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary

28 judgment practice, the moving party bears the initial responsibility of presenting the basis for its

1   motion and identifying those portions of the record, together with affidavits, if any, that it

2   believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;

3   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets

4   its burden with a properly supported motion, the burden then shifts to the opposing party to

5   present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*,

6   477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

7         A clear focus on where the burden of proof lies as to the factual issue in question is crucial

8   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

9   summary judgment does not necessarily need to submit any evidence of its own.  When the

10  opposing party would have the burden of proof on a dispositive issue at trial, the moving party

11  need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National*

12  *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

13  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

14  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

15  summary judgment motion may properly be made in reliance solely on the 'pleadings,

16  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

17  should be entered, after adequate time for discovery and upon motion, against a party who fails to

18  make a showing sufficient to establish the existence of an element essential to that party's case,

19  and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a

20  circumstance, summary judgment must be granted, "so long as whatever is before the district

21  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

22  satisfied."  *Id*. at 323.

23        To defeat summary judgment the opposing party must establish a genuine dispute as to a

24  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

25  is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

26  248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

27  will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

28  determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party

13

1    is unable to produce evidence sufficient to establish a required element of its claim that party fails

2    in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

3    of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

4    at 322.

5         Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

6    the court must again focus on which party bears the burden of proof on the factual issue in

7    question.  Where the party opposing summary judgment would bear the burden of proof at trial on

8    the factual issue in dispute, that party must produce evidence sufficient to support its factual

9    claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

10   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

11   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

12   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

13   demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such

14   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

15   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

16        The court does not determine witness credibility.  It believes the opposing party's

17   evidence, and draws inferences most favorably for the opposing party.  *See id*. at 249, 255;

18   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

19   proponent must adduce evidence of a factual predicate from which to draw inferences.  *Am. Int'l*

20   *Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing

21   *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary

22   judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On

23   the other hand, the opposing party "must do more than simply show that there is some

24   metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead

25   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

26   *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary

27   judgment.

28   /////

14

Concurrent with the motion for summary judgment, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 41-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## B.  Analysis

The substance of plaintiff's claims are that Mulford and Moeckly were deliberately indifferent to plaintiff's safety and medical needs at the time of McElroy's assault on plaintiff during the January 15, 2013 basketball game, that they failed to prevent a second assault two days later and that Gonzalez and Knipp deprived plaintiff of his due process rights in the disciplinary and housing hearings that followed the fight on January 17, 2013.  Each claim, in turn, is addressed below.

### 1.  Deliberate Indifference Claims

Plaintiff's allegations of deliberate indifference by Mulford and Moeckly actually encompass two failures to act.  First, plaintiff alleges that these defendants observed the basketball game assault and failed to summon medical help for plaintiff, in deliberate indifference to his medical needs.[7]  ECF No. 22 at 8.  Second, plaintiff alleges that Mulford and Moeckly were deliberately indifferent when they failed "to order a yard down (code one) staff response to a [sic] inmate assault and battery" or take other measures after the January 15th assault which would have prevented the second assault on January 17, 2013.  *Id.* at 8, 11-12.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*,

---

[7] As noted, plaintiff does not contend that Mulford or Moeckly should have known that McElroy would hit plaintiff while he was attempting a lay-up in their basketball game and he admits that that he believed it was a one-time event.  ECF No. 53 at 6.  Thus, the claims as to this incident are directed at their response to the assault.

503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  *Johnson v. Lewis*, 217 F.3d 726, 731-732 (9th Cir. 2000) (quotations and citations omitted).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that: (1) he had a serious medical need and (2) the defendant's response to that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  A deliberately indifferent response may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care was provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id*. at 842.

Defendants first argue that neither defendant could have intervened to stop the assault because neither saw it happen.  Defendant Mulford argues that he was not even at the prison on January 15, 2013.  Thus, he could not have witnessed McElroy's assault on plaintiff during the basketball game and been indifferent to his safety.  Mulford submits his declaration testimony that he was not there, ECF No. 41-11 at ¶ 9, and a corroborating attendance sheet indicating that he worked no hours on that day.  ECF No. 41-10.  The date in question is labeled with the code "RDO" for "regular day off."  *Id.*; ECF No. 41-11 (Decl. of Mulford) at ¶ 7 ("January 15, 2013 fell on a Tuesday, which was one of my regular days off (RDO) of work.").

/////

Notwithstanding that evidence, plaintiff insists that he saw Mulford on the 15th at the time of the assault.  He also claims that Mulford traded shifts with a co-worker, and that "the actual total days worked on his timesheet contradicts" Mulford's claim that he was not there.  ECF No. 53 at 5.  But review of the attendance sheet, shows no such contradiction.  Further, plaintiff submits no evidence supporting his claim that Mulford traded shifts with another employee on the 15th.

Plaintiff's statement that he saw Mulford on the 15th, when weighed against Mulford's testimony and documentary evidence that he was not at work that day, presents a close call for summary judgment.  Such an assertion in a similar case was found insufficient to raise a triable issue of material fact.  *Green v. Thompson*, No. C 10-5721 WHA (PR), 2013 U.S. Dist. LEXIS 18854 (N.D. Cal. Feb. 12, 2013) ("The accuracy of the time sheets showing [defendant]'s absence on June 9, consistent with his regular work schedule, is not called into question by any evidence submitted by plaintiff or otherwise in the record.  As a result, a fact-finder would not have any reasonable basis to find them, as opposed to Plaintiff's memory, inaccurate.").   In *Green*, the court noted that the papers filed in support of summary judgment showed that Thompson was not working at the prison on the date of the alleged Eighth Amendment violation.  As in this case, Thompson submitted a declaration stating as much, and it was supported by his time sheets showing that the date in question was one of his regular days off and did not work that day.  As in this case, the plaintiff in *Green* claimed to have personally observed the defendant present (indeed committing the offending act) at the time of the alleged violation.  In spite of that claim however, the court stated that "[t]he factual dispute over whether Thompson said and did what plaintiff alleged, however, is not a 'genuine' factual issue within the meaning of *Celotex*.  The accuracy of the time sheets showing Thompson's absence on June 9, consistent with his regular work schedule is not called into question by any evidence submitted by plaintiff or otherwise in the record.  As a result, a fact-finder would not have any reasonable basis to find them, as opposed to Plaintiff's memory, inaccurate."  *Id.* at *5-6.

Here, however, plaintiff is rather pointed in challenging the accuracy of the time sheets.  Although he lacks documentary evidence to submit and instead questions the total calculations

17

based on the sheet, he insists that he saw and walked past Mulford on the date in question.  Both witnesses have submitted statements under oath that directly contradict each other.  Both statements are based on claims of percipient observations and memory.  To resolve the conflict, a factfinder must conclude that one of the witnesses is either mistaken, fabricating, or otherwise not credible.  The factfinder may well turn to the time sheet to assist in making that credibility determination, but it cannot be made on summary judgment.  For the very reasons argued by Mulford, a jury might very well resolve the credibility question in his favor.  But it might not, and which witness to believe remains a question of fact for trial and cannot be resolved on this motion.  *See Anderson*, 477 U.S. at 255 (stating that the court should not make credibility determinations in reviewing a motion for summary judgment).

Moeckly also argues that he did not observe the January 15 assault.  ECF No. 41-12 (Decl. of Moeckly) at ¶ 6 ("On January 15, 2013, I did not observe inmate McElroy hit Plaintiff, intentional or otherwise.").  As with Mulford, there is a direct conflict between percipient witnesses as to whether Moeckly was present and saw plaintiff being assaulted and raising his arms in an apparent plea for assistance.  As with Mulford, at trial a jury could very well credit Moeckly's testimony and reject that of plaintiff's, but the question of which version to credit is one that cannot be determined on paper.  *See Anderson*, 477 U.S. at 255.

However, the factual dispute over whether Mulford and Moeckly witnessed the January 15th assault does not end the analysis on this motion.  A factual dispute must be both genuine and material.  As noted, plaintiff does not allege that either Mulford or Moeckly had any way to know that when plaintiff was playing basketball with McElroy, McElroy would hit plaintiff on the side of the face when he went in for the lay-up.  Thus, the deliberate indifference claim is predicated on the failure to respond to, rather than prevent, the assault.  Here, even if Mulford and Moeckly were present and saw the assault occur, plaintiff has not submitted evidence raising a triable issue of fact that they violated plaintiff's Eighth Amendment rights by depriving him of needed medical attention, either through deliberate indifference or otherwise.  Plaintiff conceded in his deposition that he did not ask them for medical help and that he actually received the treatment he

/////

18

needed.[8]  There is simply no genuine dispute in that regard.  The undisputed evidence shows that plaintiff was able to, and did, obtain treatment for his injured lip following the assault.  He was timely treated and no act or failure to act by either Mulford or Moeckly prevented the needed medical attention.  Accordingly, plaintiff has not raised a triable issue of fact as to whether the defendants knew that he faced a serious risk of harm if they failed to intervene to obtain medical attention, yet failed to do so.  The undisputed facts show that plaintiff did not require such intervention.  Thus, Moeckly and Mulford are entitled to summary judgment in their favor on plaintiff's claim that they were deliberately indifferent to his serious medical needs following the January 15, 2013 assault.

Second, there is no genuine dispute over any material issue of fact regarding plaintiff's remaining allegations against Mulford and Moeckly: that they failed to take action that would have prevented the second assault.  In addition to the provision of necessary medical care, the Eighth Amendment requires prison officials to protect inmates from violence at the hands of other prisoners.  *Farmer*, 511 U.S. at 833.  To succeed on an Eighth Amendment failure-to-protect claim, a plaintiff must show that (1) he faced a substantial risk of serious harm, (2) the defendants were deliberately indifferent to that risk, and (3) the defendants' failure to act was a proximate cause of the harm plaintiff suffered.  *Castro v. Cnty. of L.A.*, 797 F.3d 654, 665-66 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  Defendants argue that they were not deliberately indifferent to the risk that plaintiff would face a subsequent attack from McElroy because they did not know of that risk.  The undisputed evidence supports this argument.  Defendants both declare that they were not aware of any risk that plaintiff would be attacked by McElroy after January 15.  ECF No. 41-12 at ¶¶ 12-17; ECF No. 41-11 at ¶¶ 18-21.

/////

---

[8] He also conceded in his deposition that he did not need Mulford's or Moeckly's permission to seek treatment.  Although he later, in opposing summary judgment, contradicted himself on this latter point, he nonetheless admits that he obtained the medical treatment that he needed.  Further, under the "sham" affidavit rule "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'"  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.2009) (quoting *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir.1991)).

1   Significantly, plaintiff himself admits that he believed that the January 15, 2013 basketball game

2   incident was a one-time event and that he did not think McElroy had any reason to attack him

3   again.  ECF No. 53 at 6.  Plaintiff has not explained how the defendants should have assessed the

4   risk of another attack any differently.  He simply has not produced evidence from which a

5   factfinder could reasonably infer that defendants were aware of a likelihood of a second attack.

6   Accordingly, Mulford and Moeckly are also entitled to summary adjudication on plaintiff's claim

7   that they failed to protect him from the January 17, 2013 attack.

8                    **2.  Due Process Claims Against Gonzalez and Knipp**

9        Plaintiff claims that defendants Gonzalez and Knipp deprived him of due process by: (1)

10  failing to provide him with an investigative employee to assist his preparation for the disciplinary

11  hearing and ICC hearing, (2) failing to produce a videotape of the January 17, 2013 incident

12  during either hearing, (3) refusing to call his staff witness at either hearing, and (4) finding him

13  guilty of a disciplinary violation on insufficient evidence.

14                        **a.  *Heck v. Humphrey***

15       Gonzalez and Knipp first argue that these due process claims are barred by *Heck v.*

16  *Humphrey*, 512 U.S. 477 (1994), because plaintiff was assessed a loss of behavioral credits and

17  has not obtained a reversal of the disciplinary finding.

18       In *Heck* and its progeny, the Supreme Court held that, where a judgment in a prisoner's

19  favor on § 1983 action would necessarily imply the invalidity of the prisoner's sentence or

20  conviction, the prisoner's claim is not cognizable until she demonstrates that the sentence or

21  conviction has been invalidated.  *Heck*, 512 U.S. at 483, 486-87.  This rule usually applies where

22  a prisoner seeks to invalidate a disciplinary determination that carried a forfeiture of behavioral

23  credits because a finding in the prisoner's favor would invalidate the credit forfeiture and thus

24  reduce the sentence.  *Edwards v. Balisok*, 520 U.S. 641, 644 (1997).  As the U.S. Court of

25  Appeals for the Ninth Circuit has noted, however, application of *Heck*'s favorable termination

26  rule "turns solely on whether a successful § 1983 action would necessarily render invalid a

27  conviction, sentence, or administrative sanction that affected the length of the prisoner's

28  confinement."  *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003).  Thus, where behavioral

1  credits do not necessarily impact her sentence (because, for example, she is serving an

2  indeterminate life sentence), the prisoner may challenge a forfeiture of credits in her civil rights

3  action. *Roman v. Knowles*, No. 08cv1343-JLS (POR), 2011 U.S. Dist. LEXIS 95410, at *37-40

4  (S.D. Cal. June 20, 2011) (explaining why *Heck* does not bar a challenge to a disciplinary finding

5  with credits forfeiture brought by a California inmate serving an indeterminate life sentence); *see*

6  *Nettles v. Grounds*, No. 12-16935, 2016 U.S. App. LEXIS 13573, at *30-33 (9th Cir. July 26,

7  2016) (en banc) (holding that § 1983, not habeas, is the appropriate vehicle for challenging

8  disciplinary findings that did not necessarily lengthen the prisoner's sentence).

9       Here, it is undisputed that plaintiff was assessed a forfeiture of behavioral credits when he

10  was found guilty of participating in a riot.  However, defendants have failed to provide the court

11  with evidence showing that the restoration of the forfeited credits would necessarily shorten the

12  duration of plaintiff's confinement.  They have provided no information regarding plaintiff's

13  sentence or the impact of the credits forfeiture thereon.  As they have not provided the

14  information and evidence necessary to show the applicability of the *Heck* rule to this case,

15  summary judgment based on the basis of *Heck* must be denied.

16                 **b.  <u>Some Evidence Supports the Disciplinary Sanction</u>**

17       The undisputed facts show that "some evidence" supported plaintiff's disciplinary

18  sanction and they are therefore entitled to summary judgment on plaintiff's due process claim that

19  the sanction was based on insufficient evidence.   Assuming that the hearing procedures

20  themselves satisfy due process requirements, the discipline imposed does not offend due process.

21       [T]he requirements of due process are satisfied if some evidence supports the
     decision by the prison disciplinary board to revoke good time credits. This

22       standard is met if "there was some evidence from which the conclusion of the
     administrative tribunal could be deduced . . . ."  *United States ex rel. Vajtauer v.*

23       *Commissioner of Immigration*, 273 U.S., at 106.  Ascertaining whether this
     standard is satisfied does not require examination of the entire record,

24       independent assessment of the credibility of witnesses, or weighing of the
     evidence. Instead, the relevant question is whether there is any evidence in the

25       record that could support the conclusion reached by the disciplinary board."

26  *Superintendent v. Hill*, 472 U.S. 445, 455-456 (1985).

27       Plaintiff argues that this standard was not met because the law prohibited Gonzalez from

28  relying solely on Mulford's report about the January 17, 2013 incident.  Contrary to plaintiff's

1    assertions, however, a reporting officer's statement may, by itself, be sufficient evidence under

2    the *Hill* standard.  *E.g.*, *Jones v. Johnson*, No. CV 14-09373 FMO (AN), 2015 U.S. Dist. LEXIS

3    25084, at *9-10 (C.D. Cal. Jan. 14, 2015).  Officer Mulford reported that he had seen Officer

4    Cisneros tell plaintiff and another inmate to "stop fighting" and "get down," but that both had

5    ignored those orders and continued to fight.  ECF No. 41-6 at 8.  Mulford wrote that, even after

6    being sprayed with pepper spray, plaintiff "continued fighting and ignored staff orders to get

7    down and prone out, heading toward Officer S. Parks' location on the track."  *Id.*  Other officer

8    reports were consistent with Mulford's.  ECF No. 41-6 at 42 (report of Officer Cisneros) and 66

9    (report of Officer Parks).  This constituted "some evidence" that plaintiff had participated in a

10   riot.  *See* Cal. Code Regs., tit. 15, § 3005(d)(3) ("Inmates shall not participate in a riot, rout, or

11   unlawful assembly.").

12        This is not to say, however, that plaintiff therefore cannot prevail on his claim he was

13   deprived of a meaningful opportunity to show that he never should have been disciplined for

14   participation in a riot.  The latter question turns, in part, on whether plaintiff was denied due

15   process when he was not allowed to call Gold as a witness.  As discussed below, whether the

16   denial of that witness offends due process turns on disputed issues of material fact which cannot

17   be resolved on summary judgment.  Accordingly, the broader question of whether plaintiff was

18   afforded due process when he was disciplined for participating in a riot must await resolution of

19   the issue of whether he was improperly denied the right to call Gold as a witness.

20              **c.  <u>Gonzalez's Refusal to Call Officer Gold</u>**

21        Although there was "some evidence" supporting Gonzalez's guilty finding, plaintiff has

22   nevertheless raised a triable issue of material fact regarding whether that finding was fatally

23   tainted by Gonzalez's alleged refusal to call Officer Gold.  According to plaintiff, Gold's

24   testimony would have made a material difference in the outcome of the proceeding.

25        Gonzalez seeks summary judgment on the denial of the witness claim based on qualified

26   immunity.  "The doctrine of qualified immunity protects government officials 'from liability for

27   civil damages insofar as their conduct does not violate clearly established statutory or

28   constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*,

1   555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Resolving

2   the defense of qualified immunity involves a two-step process; the court must determine (1)

3   whether the plaintiff has alleged or shown a violation of a constitutional right, and (2) whether the

4   right at issue was clearly established at the time of defendant's alleged misconduct.  *Pearson*, 555

5   U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).  These steps may be analyzed

6   in any order.  *Id.* at 236.

7       "Qualified immunity is applicable unless the official's conduct violated a clearly

8   established constitutional right."  *Pearson*, 555 U.S. at 232.  To be clearly established "[t]he

9   contours of the right must be sufficiently clear that a reasonable official would understand that

10  what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

11  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."

12  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th

13  Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time]

14  gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting *Saucier*,

15  533 U.S. at 202).

16      In the context of a disciplinary proceeding where a liberty interest is at stake[9], it is well-

17  established that due process requires an inmate to receive: (1) advance written notice of the

18  disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional

19  goals, to call witnesses and present documentary evidence in his defense; and (3) a written

20  statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

21  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

22  /////

23

24      [9] Defendants have not argued in their summary judgment motion that the sanctions
    imposed as a result of the disciplinary finding did not impinge on a liberty interest protected by
25  the Due Process Clause.  Because defendants have not raised the argument and plaintiff has thus
    not had an opportunity to respond to it, the court has not considered whether a triable issue of
26  material fact exists regarding whether plaintiff had a liberty interest in being free from the
    sanctions.  *See Christ v. Blackwell*, No. 2:10-cv-0760-EFB P, 2016 U.S. Dist. LEXIS 102825, at
27  *35-40 (E.D. Cal. Aug. 4, 2016).  Instead, the analysis above assumes that such a liberty interest
    is implicated here.
28

1       Gonzalez argues that it is undisputed that plaintiff signed a waiver of his right to call

2 witnesses.  Thus, Gonzalez argues, a reasonable officer would not have known that barring

3 witnesses in light of that waiver would violate plaintiff's due process rights.  While Gonzalez

4 emphasizes the signed document in which plaintiff allegedly waived his right to witnesses,

5 Gonzalez's argument overstates what that form actually shows.  It contains a section at the

6 bottom to be used to designate witnesses.  The section includes boxes to check with the choices of

7 "reporting employee," "staff assistant," "investigative employee," "other," and "none."  ECF No.

8 41-6 at 2; ECF No. 49 at 63.  None of those boxes are checked.  No information was entered on

9 the lines below those boxes where available to list the names and titles of witnesses.  Nor is any

10 information entered in the boxes next to those lines which are to be checked designating whether

11 the request for the witness was "granted" or "not granted."  In essence, that portion of the form

12 was simply not completed and no information at all was recorded as to requests for witnesses and

13 the disposition of that request.  Instead, plaintiff's signature is depicted above the location on the

14 form for recording the information, immediately next to the heading "witnesses."  What precisely

15 that signature and the absence of any entries below it are supposed to signify is not at all clear.

16 But what the form conspicuously does not include is a clear statement that the inmate was

17 knowingly opting to waive his right to call witnesses.

18       Further, there are sharp disputes between plaintiff concerning plaintiff's statements of

19 intent to call witnesses.  Gonzalez argues that because the form signed by plaintiff contains no

20 names in the witness section at the bottom, he could not have known that it would violate

21 plaintiff's rights to deny the request to call Officer Gold.  Because the plaintiff's signature is

22 depicted next to an "x" to side of the heading for witnesses, Gonzalez apparently reads the form

23 as an expression by plaintiff that he intended to only call himself.  But if that is the case,

24 Gonzalez does not explain why plaintiff's name is not listed on the lines provided for listing

25 witnesses.  Nor does he explain why there is no affirmative statement in the form that plaintiff

26 was knowingly and willfully waiving a specific right to call witnesses.

27       Plaintiff, on the other hand, disputes that he knowingly waived his right to call witnesses.

28 He claims that the officer who filled out the form failed to list witnesses that he requested.  He

1   further attests that he repeatedly told Gonzalez at the time of the hearing that he wanted Gold to

2   testify.  The document relied on by Gonzalez, standing alone, does not demonstrate that plaintiff

3   waived his right to have witnesses appear at the hearing.  Further, according to plaintiff, Gonzalez

4   denied the request to call Gold not because Gold's testimony was irrelevant, but because

5   Gonzalez did not want to pit "staff against staff."  As material facts are in dispute regarding

6   whether Gonzalez knew that plaintiff wanted to present the relevant testimony of Officer Gold

7   but prevented him from doing so, the question of whether Gonzalez should be accorded qualified

8   immunity on plaintiff's due process cannot be resolved on summary judgment.

9          Because plaintiff has raised a triable issue of material fact that he was denied a relevant

10  witness at his disciplinary hearing in violation of his procedural due process rights, the hearing

11  officer's determination is called into question.  That determination, while supported by some

12  evidence in the record that was considered, did not take account of the testimony plaintiff would

13  have elicited from Officer Gold.  Thus, it may have come out differently if plaintiff had been

14  allowed to present Officer Gold's testimony.  *See In re Fratus*, 204 Cal. App. 4th 1339, 1351-52

15  (2012) (noting that prison officials' denial of a prisoner's right to witnesses at his disciplinary

16  hearing made it impossible for the court to evaluate whether sufficient evidence supported the

17  disciplinary sanction).  Plaintiff has presented evidence from which a factfinder could determine

18  that he was unlawfully denied the opportunity to present Gold and that he should be provided

19  with a new hearing that comports with due process.  *Nash v. Ives,* No. CV 13-7016-ABC (RNB),

20  2014 U.S. Dist. LEXIS 31443, at *406 (C.D. Cal. Feb. 7, 2014) (noting that prisoners who have

21  been denied their procedural due process rights in a disciplinary hearing are generally entitled to a

22  new hearing).

23              **d.  <u>Denying Assistance of Investigative Employee</u>**

24         The Due Process Clause entitles a prisoner to the assistance of an investigative employee

25  only if he is illiterate or the issues involved in the disciplinary action are so complex that it is

26  unlikely that the prisoner can gather and present necessary evidence.  *Wolff*, 418 U.S. at 570.

27  Plaintiff alleges neither condition here.  Courts have noted that retention in administrative

28  segregation does not entitle an inmate to the assistance of an investigative employee.  *E.g., Servin*

1    *v. Hill*, No. 2:12-cv-2914-MCE-EFB P, 2014 U.S. Dist. LEXIS 162770, at 31-33 (E.D. Cal. Nov.

2    20, 2014); *Cross v. Cambra*, No. C 98-0130 VRW (PR), 1998 U.S. Dist. LEXIS 20432, at *3-4

3    (N.D. Cal. Dec. 30, 1998) ("California prison regulations rise above the floor set by *Wolff* and

4    also provide for an investigative employee or staff assistant if a prisoner's housing status makes it

5    unlikely that he will be able to collect and present the evidence necessary for an adequate

6    comprehension of the case. [cit. omitted.]  However, the Due Process Clause only requires that

7    prisoners be afforded those procedures mandated by *Wolff*; it does not require that prisons comply

8    with its own, more generous procedures.").  Accordingly, plaintiff's claim that defendants

9    deprived him of due process when they did not assign him an investigative employee necessarily

10   fails.

11                              **e.  Video Recordings**

12            In addition, defendants are entitled to summary judgment on plaintiff's claim that they

13   deprived him of due process by refusing to consider video recordings of the alleged riot at the

14   RVR hearing.  Plaintiff has failed to produce any evidence supporting his assertion that such

15   recordings exist.  On the other hand, defendants have proffered evidence that no recordings exist.

16   Defendant Gonzalez entered a notation in his hearing report that videotape evidence "was not

17   applicable."  ECF No. 41-6 at 7.  He states in his declaration that although plaintiff believes

18   otherwise, Gonzalez "confirmed that there was no videotape evidence available."  ECF No. 41-14

19   at ¶¶ 10 & 11.  Plaintiff contends that the Crime/Incident Report, Log No. AYD-13-01-0006

20   regarding the alleged riot shows that there was video of the incident.  ECF No. 49 at 13-14.  But

21   this document shows no such thing.  It reveals that inmates involved in the incident were

22   potentially interviewed on videotape about it, but it does not show that the incident itself was

23   recorded.  ECF No. 41-6 at 15.  Other than to state his own belief, plaintiff presents no evidence

24   to show the incident was video recorded.  He has not provided any evidence from which a

25   factfinder could conclude that defendants refused to consider a relevant, existent videotape of the

26   /////

27   /////

28   /////

alleged riot during his RVR hearing.[10]  Accordingly, defendants are entitled to summary judgment on plaintiff's due process claims predicated on denying access to video evidence.

### f.  Knipp Not Involved in RVR Hearing

Further, defendant Knipp is entitled to summary judgment on plaintiff's due process claims.  There is no genuine dispute over the fact that Knipp was not involved in the RVR hearing.  Thus, there is no basis to hold him liable for any alleged due process violations committed by his subordinates therein.  While plaintiff argues that Knipp should face liability based on his supervisory position as warden, a supervisor may be liable only where he was personally involved in the constitutional violation or where there is enough causal connection between his wrongful conduct and the violation.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  The undisputed evidence shows that Knipp was not involved in the hearing personally and did not review plaintiff's related grievance.  ECF No. 53 at 37.  Plaintiff argues that Knipp "has a history of known acts of cover ups" (ECF No. 49 at 12) and submits a portion of a complaint filed in U.S. District Court alleging constitutional violations at MCSP as evidence of Knipp's wrongful conduct.  ECF No. 53 at 41-54.  This complaint, however, is totally unrelated to the facts of the instant case and, as a collection of unproven allegations, obviously cannot constitute evidence.

### g.  No Due Process Violation in Plaintiff's Administrative Housing Placement

Lastly, the undisputed facts show that plaintiff received all the process that was due in connection with his ICC hearing.  The Ninth Circuit has held that prisoners are entitled to fewer procedural protections in hearings to determine administrative housing placement.  *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1987).  In such hearings, due process requires only that authorities inform the prisoner of the charges against him or their reasons for considering segregation and allow the inmate to present his views.  *Id.*  "[T]he due process clause does not

---

[10] While plaintiff claims defendants have withheld the videotape evidence from him, he has not filed any motion to compel its production.  *See* ECF No. 44 (plaintiff's sole motion to compel in this action, seeking his deposition transcript).  It was plaintiff's obligation to utilize the discovery rules to marshal the evidence supporting his claims.  He has not, and he has not presented any evidence on which a reasonable fact finder could conclude that, notwithstanding the defendants' contrary evidence, a video recording of the event exists but was not provided to him.

require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* Plaintiff does not dispute that he was provided notice of the reasons for the placement and was allowed to state his views. ECF No. 53 at 11-12. Summary judgment in favor of defendant Knipp on plaintiff's due process claims with regard to the ICC hearing is thus appropriate.

### III.    Order and Recommendation

For the foregoing reasons, it is hereby ORDERED that:

1.   Defendants' July 1, 2016 motion to strike (ECF No. 61) is denied.

2.   Plaintiff's June 20, 2016 motion for an extension of time (ECF No. 58) is denied.

Further, it is RECOMMENDED that defendants' February 26, 2016 motion for summary judgment (ECF No. 41) be denied as to plaintiff's claim that defendant Gonzalez denied him due process in the February 9, 2013 RVR hearing by denying his request for witness Officer Gold and granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 6, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

28